UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60345-CR-SMITH

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

VALESKY BAROSY,

        Defendant.

_____/

## OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

COMES NOW, the Defendant, Valesky Barosy, by and through the undersigned attorney, hereby states his objections to the Pre-Sentence Investigation Report (PSR) and in support thereof states:

**Mr. Barosy objects to Paragraph 31 of the PSR**. That paragraph holds him responsible for a loss amount of $4,150,446. However, according to paragraph 20 of the PSR, that amount is the intended loss amount. Paragraph 20 states that the actual loss amount was, $2,108.654.

Mr. Barosy should be held responsible for the actual loss amount. The ordinary meaning of "loss" in the context of § 2B1.1 is "actual loss." *United States v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022). The Court in *Banks* decided that in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word loss is the loss the victim actually suffered. *Id* at 259. Pursuant to §2B1.1(b)(1)(I), because the loss amount is more than $1,500,000 but nt more than $3,500,000, his offense level should increase by 16 levels not 18.

**Mr. Barosy objects to paragraph 32 of the PSR**. That paragraph states that because the offense involved sophisticated means and the Defendant intentionally engaged in or caused the conduct constituting sophisticated mean there is a two level increase, pursuant to §2B1.1(b)(10)(C). Mr. Barosy objects to the imposition of the two levels as the offense did not involve sophisticated means nor did he engage in nor cause the conduct constituting sophisticated mean.

The Application Note of §2B1.1, paragraph 9(B), provides guidance. It states:

For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

The Eleventh Circuit does not require that each of the defendant's actions be sophisticated in order to impose this enhancement. *United States v. Gherter*, 605 F.3d 1256, 1267 (11th Cir. 2010). The enhancement is applied if the totality of the scheme is sophisticated. *Id.*

### Mr. Barosy's conduct was not "especially complex" and the offense was not "especially intricate"

In *Gherter*, the Court found that the sophisticated means enhancement applied as that Defendant conducted extensive research on his victims in order to develop inside information, used unwitting couriers to pick up and deliver the proceeds of his fraud in order to conceal the scheme, forged documents, on one occasion referenced a confidential internal account in order to facilitate the execution scheme, and had funds transferred to unwitting third parties who then withdrew and transferred the cash to the Defendant.

Mr. Barosy's scheme was not sophisticated, complex or intricate. To begin, every individual for whom he obtained a Paycheck Protection Program (PPP) loan knew of Mr. Barosy's identity. Mr. Barosy never hid. Next, in order to apply for the loans, he used the format established by the Small Business Administration. Once the loan was approved, the loan documents had to be signed via DocuSign. The entire application was filled out from Mr. Barosy's home utilizing his IP address. He did not create a shell company in order to submit the applications and did not obtain a new IP address in order to conceal his conduct.

Furthermore, once the loan was disbursed into the individual's respective bank account, that person then wired an agreed percentage of the loan directly to Mr. Barosy. He did not create false banks accounts in order to conceal those wire transfers. There was nothing especially complex or especially intricate in the execution and there was certainly no concealment of the offense. In fact, the government did not have to do much research to find Mr. Barosy's proceeds. All that it took was the issuing of subpoenas to the bank that did business with Mr. Barosy. Once the government received the bank records, it was evident that Mr. Barosy received wire transfers from the individuals who received PPP loans and then used that money to purchase watches, make a down payment on a sports car and purchase luxury hand bags.

    Respectfully submitted,

    OMAR A. LOPEZ, P.A.
    848 Brickell Avenue, Suite 602
    Miami, FL 33131
    T:305.789.4430
    F:305.503.9521
    Email: omar@omarlopezlaw.com

    By: <u>Omar A. Lopez</u>
      Omar A. Lopez, Esquire
      Florida Bar No. 017870

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on this 15th day of February 2023, to all interested parties via the CF/ECF filing system.

<u>Omar A. Lopez, Esquire</u>
Omar A. Lopez, Esquire