UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60345-CR-SMITH

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

VALESKY BAROSY,

                Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Valesky Barosy, is to be sentenced after he was found guilty as charged in the Indictment.  The first five counts charged Mr. Barosy with wire fraud, in violation of 18 USC § 1343.  Counts six through eight charged Mr. Barosy with money laundering, in violation of 18 USC § 1957.  Count nine charged him with aggravated identity theft, in violation of 18 USC § 1028A(a)(1).

## INTRODUCTION

Before the Honorable Court stands Valesky Barosy who is a son, a brother, a friend, a man who is repentant for his acts.  Mr. Barosy arrived to the United States from Port Au Prince, Haiti, when he was 17 years old.  His father, Leonidis Barosy, also brought his younger brother, Dassi, who was seven years old at the time.   Their father had been living in the United States and wanted to give his sons the opportunity of a better life.  The brothers went to live with their sister, Marie Barosy, in Hollywood, Florida.  Once situated, Mr. Barosy enrolled as junior at Dolphin Park High School in Miramar, Florida.

During that time, Marie lived in government housing and could not afford to feed and clothe her brothers. She could only offer them a roof. Meanwhile, their father who was 78 at the time was retired and received $350 a month in government aid to feed his sons. The money wasn't enough. As such, Mr. Barosy began to work at Walmart in Davie, Florida, where he earned $7.85 per hour. He then moved to the electronics department where he was paid $10 per hour and then finally was promoted to customer service manager where he was paid $13 per hour. However, this last position required that he work as a full time employee. By then Mr. Barosy was 18 years old so he dropped out of high school his senior year and became a full time Walmart employee.

## From high school dropout to business owner

When he worked at Walmart, Mr. Barosy met a French man, Joseph Laurent, who would often visit the store to purchase electronics. It was Mr. Laurent who mentored Mr. Barosy to start his own exotic car wash business. The two originally struck up a friendship because Mr. Barosy was the only Walmart employee who spoke French at the time. Mr. Laurent grew fond of Mr. Barosy and even invited him over to his home for Thanksgiving dinner. While at Mr. Laurent's home, Mr. Barosy noticed his exotic cars. He offered to wash his cars for free. As it turned out, Mr. Barosy did such great job that Mr. Laurent fired his car wash guy. His friends then hired Mr. Barosy to wash all of their exotic cars and would often tip him anywhere from $100 to $1000 per car.

Mr. Laurent advised Mr. Barosy to start a car wash business and lent Mr. Barosy $5000 to buy a car wash van. He gave him a year to repay the loan. Well Mr. Barosy bought the car wash van and did so well that he had enough to repay the loan within 90 days. However, Mr. Laurent did not accept the $5000. Instead he told Mr. Barosy to reinvest that money in his car

wash business and told him to purchase a second van.  Mr. Barosy listened but he not only purchased a second van, he purchased a third as well.  He eventually grew his exotic car wash business and hired two more car wash vans.  At that point, he no longer had to wash cars as he ran the business.  Thus, the high school dropout went from working at Walmart, to running his own exotic car wash fleet.

### A Downward Variance is Justified Under 18 U.S.C. § 3553

The Supreme Court, in *United States v. Booker*, 125 S. Ct. 738 (2005), modified 18 U.S.C. § 3553 (b) (1); the provision of the federal sentencing statute that made the Sentencing Guidelines mandatory.  It severed and excised 18 U.S.C. § 3553 (b) (1) from the Sentencing Reform Act of 1984 and in doing so, effectively made the Guidelines advisory.  Nevertheless, the modification still requires a sentencing court to consider the sentencing range contained within the Sentencing Guidelines.  However, the modification allowed the sentencing court to tailor a Defendant's sentence, in light of other statutory concerns.  As set forth below, an analysis of the section 3553 factors favors a minimal sentence.

### Nature and Circumstance of the Offense

Mr. Barosy applied for Paycheck Protection Program (PPP) loans for individuals who were interested in obtaining the loan.  In exchange for his service, he charged his clients 20% of the loan amount he was able to secure.  In order to secure the loans Mr. Barosy filled out, submitted, and signed the required Small Business Administration (SBA) forms via the internet through his home computer.  Once the loan amount was deposited into the individual's account, Mr. Barosy's percentage was wired to his bank account.  He then used those monies to purchase or lease personal items.

**The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense**

The Court is called upon to balance the first two prongs with the need that the punishment be just.  The Presentence Investigation Report states that Mr. Barosy's total offense level is 27 and that he has a criminal history category of one.  His guideline range is 70-87 months in prison.   The PSR's offense level of 27 puts Mr. Barosy on par with offenders who have committed acts more egregious than his offense.  It places him at a level more serious than someone who, pursuant to United States Sentencing Guidelines:

- Committed a robbery and used a firearm. §2B3.1(b)(2)(b) (offense level 26)

- Committed a robbery and a victim suffered permanent or life-threatening bodily injury. §2B3.1(b)(3)(B)(C) (offense level 26)

- Committed a robbery and abducted a person to facilitate the commission of the offense or to facilitate escape. §2B3.1(b)(4) (offense level 24 )

- Committed arson or damage to property by use of explosives and created a substantial risk of death or serious bodily injury to any person other than a participant in the offense. §2K1.4(a)(1) (offense level 24)

### To afford Adequate Deterrence to Criminal Conduct

Mr. Barosy understands that he will go to prison for his actions in this case.  He does not ask the Court to consider a non-prison sentence.  He knows that he will spend time in a prison cell separated from his family because of his actions.  A prison cell is a deterrent.  Losing one's freedom is a deterrent.  Losing his family on account of his conduct in this case is deterrent.  In reading the letters written by his friends and family in his support, the community knows that committing this crime, even by a first time offender, will be punished by prison.

### To protect the public from further crimes of the Defendant

Valesky Barosy was arrested on December 27, 2021.  After his arrest, he was granted bail with standard bond conditions.  He remained out on bail, proceeded to trial and was found guilty. After he was found guilty, the Court modified his bail to include an ankle monitor.  He has always complied with all of the conditions imposed by the Court.  There has been never been any mention that after his arrest Mr. Barosy has presented a threat of danger to the public or violated the law.  His conduct after his arrest, at the very least, demonstrates that Mr. Barosy respects the Court and its orders.

Lastly, the government seeks restitution in this case in the amount of $2,108,654.  Mr. Barosy will agree to the restitution.  At the time of his arrest, Mr. Barosy's JP Morgan Chase bank account balance was approximately $462,871.54. DE 93 at 3.   Of that amount, the government traced $409,890.82 as proceeds of this case. Id.  Mr. Barosy agreed to forfeit that amount after his trial.  He will also agree to forfeit the remainder of $52,980.72 left in his JP Morgan Chase account in order to apply that amount towards the restitution owed.

## PRISON DESIGNATION REQUEST

Mr. Barosy would request that the Court recommend to the Bureau of Prison that he be designated to a prison as close as possible to the Southern District of Florida.  His father, brother and sister, all reside in Palm Beach or Broward County, Florida, Southern District of Florida.

## CONCLUSION

Mr. Barosy knows that he will pay the price for his actions.  It will cause him time away from his family.  Again, he is not asking the Court for non-prison.  He is asking, however, that the Court take into account this Sentencing Memorandum and grant him a variance.

Respectfully submitted,

OMAR A. LOPEZ, P.A.
848 Brickell Avenue, Suite 602
Miami, FL 33131
T:305.789.4430
F:305.503.9521
Email: omar@omarlopezlaw.com

By: Omar A. Lopez
    Omar A. Lopez, Esquire
    Florida Bar No. 017870

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was on this 25th day of February 2023, furnished to all interested parties via the CF/ECF filing system.

Omar A. Lopez, Esquire
Omar A. Lopez, Esquire
